### 77065. SCHECTER v. STRICKLAND.
(375 SE2d 93)

POPE, Judge.

Plaintiff Harvey Schecter and defendant Steve Strickland are both osteopathic doctors and members of the staff at Doctors Hospital in Tucker, Georgia. In 1978, Dr. Schecter expressed his opinion to a professional review committee that a third physician, Dr. Joseph D. Morrow, was not competent. Dr. Schecter repeated this view at numerous meetings of the review committee over a period of several months.

In 1980, Dr. Morrow came under review by the Composite State Board of Medical Examiners and ultimately voluntarily surrendered his Georgia license. Dr. Morrow then applied for a medical license from the State of Oklahoma. An Oklahoma newspaper reporter, who learned of the controversy concerning Dr. Morrow's Georgia practice, contacted Dr. Strickland for his comments. In an article published on October 26, 1981, the reporter wrote that Dr. Strickland told him, inter alia: (1) Dr. Morrow was driven from his Georgia practice "by a vendetta launched by doctors Harvey Schecter and [another doctor]";

(2) the two physicians brought complaints against Dr. Morrow because of professional jealousy; and (3) "while [Dr. Morrow] was in Vietnam they were burning draft cards, smoking pot and wearing beads." Dr. Schecter brought a slander claim against Dr. Strickland for the statements made to the reporter. Alleging the statements were made willfully and maliciously, Dr. Schecter prayed for actual and punitive damages.

The initial trial of the case resulted in a verdict against Dr. Strickland for $200,000 general damages and $325,000 punitive damages. The trial judge granted Dr. Strickland's motion for new trial on the ground that the verdict was excessive. On retrial of the case, a verdict was returned in favor of Dr. Strickland (hereinafter "defendant"). Dr. Schecter (hereinafter "plaintiff") appeals the original grant of new trial and raises several enumerations of error in regard to the second trial.

1. After the initial trial, defendant filed a motion for new trial on the general grounds. In support of his motion, defendant argued the verdict was excessive. Plaintiff contends the grant of new trial on the ground the verdict was excessive[1] was improper because excessiveness must be raised by special ground and may not be raised by the general grounds in a motion for new trial. Plaintiff's assertion is true regarding a motion for new trial brought by a plaintiff on the ground the verdict was *inadequate*. See *Brown v. Garcia*, 154 Ga. App. 837 (2) (270 SE2d 63) (1980); *Selman v. Manis*, 100 Ga. App. 422 (1) (111 SE2d 747) (1959). However, the issue of the excessiveness of the verdict falls within the general grounds for a new trial. See *Baxter v. Weiner*, 246 Ga. 28 (268 SE2d 619) (1980).

"The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50; accord *Tri-State Augusta v. Woodward Lumber Co.*, 88 Ga. App. 748 (77 SE2d 769) (1953). The trial judge may, within his discretion, grant a new trial on the general grounds when that judge disapproves of the amount of the verdict. *Blanchard v. Westview Cemetery*, 133 Ga. App. 262 (1) (211 SE2d 135) (1974). Consequently, we find no abuse of discretion in the granting of a new trial after the initial trial of the case.

2. Plaintiff argues defendant slandered him by saying plaintiff launched a "vendetta" against Dr. Morrow. Truth was asserted as an

---

[1] The order granting new trial was issued December 9, 1985, prior to the 1987 Tort Reform Act (Ga. L. 1987, p. 915, § 7) which, inter alia, expressly authorizes the trial court to grant a new trial as to damages only in the event the jury's award of damages is so excessive as to be inconsistent with the preponderance of the evidence. OCGA § 51-12-12 (b).

affirmative defense. Throughout the second trial, plaintiff maintained that the jury could not determine the truth or falsity of defendant's statement without hearing evidence concerning Dr. Morrow's professional competence and treatment of patients. While some evidence of Dr. Morrow's methods of treatment was presented without objection, plaintiff was generally precluded from presenting such evidence. The trial court ruled Dr. Morrow's competence was not at issue in the case, but only whether plaintiff did, in fact, file complaints against Dr. Morrow or was involved in an ongoing feud or controversy concerning Dr. Morrow.

The jury was first confronted with the issue of whether the word "vendetta" was defamatory. "The gist of the action of slander is the unfavorable impression created in the mind of a third party by an alleged tortfeasor in using defamatory words of and concerning another in the hearing of such third party." *Kaplan v. Edmondson,* 68 Ga. App. 151, 154 (22 SE2d 343) (1942). Here, the meaning of "vendetta" was left to the determination of the jury. The jury could find the statement was slanderous or not slanderous. Yet, by repeatedly ruling that the only issue was whether an ongoing feud or controversy existed the trial court implicitly based its rulings upon the assumption that "ongoing feud or controversy" is the definition of "vendetta." The trial court's rulings ascribed a nonpejorative meaning to the word. However, dictionary definitions suggest a pejorative or derogatory meaning. For example, the jury's understanding of vendetta might include an element of revenge[2] or hostility.[3] In that event, whether the actions of the plaintiff in regard to Dr. Morrow amounted to a vendetta might reasonably depend on whether plaintiff's actions were justifiable, as opposed to undeservedly vengeful or hostile.

At trial, most of the examples given by the defendant to illustrate his conclusion that plaintiff launched a vendetta against Dr. Morrow concerned complaints by plaintiff about Dr. Morrow's competence or attempts to have his treatment of patients reviewed by other physicians. If plaintiff's actions were justifiable, then the jury might conclude the actions did not amount to a vendetta. A jury might find plaintiff's actions were justifiable if it were shown that Dr. Morrow's competence was a bona fide issue at the time plaintiff brought these complaints against him. The jury should not have been precluded from considering the motivation for plaintiff's actions.

When the plaintiff was permitted at the first trial to introduce

---

[2] *The Compact Edition of the Oxford English Dictionary* (1971) defines vendetta as "A . . . prosecution for private revenge."

[3] *Webster's Third New Intl. Dictionary* (3d ed. 1981) defines vendetta as "A prolonged feud marked by bitter hostility."

evidence concerning Dr. Morrow's competence, the jury returned a verdict of $525,000 in plaintiff's favor. The second trial, at which such evidence was excluded, resulted not in a mere reduction of the amount of the verdict but in a *complete reversal* to a defendant's verdict. The drastic reversal of the verdict when the evidence was excluded supports the conclusion that the jury must decide the motivation or justification for plaintiff's actions before it can determine whether plaintiff launched a vendetta.

"The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value." Agnor's Ga. Evidence § 10-2, p. 224 (1986). Accord *Baker v. State*, 246 Ga. 317 (3) (271 SE2d 360) (1980); *Kelly v. Floor Bazaar*, 153 Ga. App. 163 (264 SE2d 697) (1980). While any and all evidence concerning Dr. Morrow's professional competence and treatment of patients might not be relevant, such evidence which relates directly to specific complaints voiced or actions taken by plaintiff against Dr. Morrow is relevant to the issues in the case. We hold the court erred in the second trial by excluding such evidence.

3. Defendant also told the reporter that the complaints made by plaintiff against Dr. Morrow were motivated by professional jealousy. On cross-examination defendant stated he believed in good faith that plaintiff was jealous of Dr. Morrow; he admitted, however, he could not prove the statement and should not have made it. He also testified that the term "professional jealousy," as used in the medical community, refers to financial success or patient volume. Plaintiff was not permitted to cross-examine the defendant any further concerning the reasons for making the statement or the reasonableness of defendant's belief, because the trial court ruled defendant had already conceded the issue. Plaintiff argues the court erred in barring further cross-examination concerning the jealousy statement.

To be actionable under the slander statute, a statement must be false as well as malicious. *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49 (I) (230 SE2d 45) (1976). A defendant in a slander case may prove a statement was not malicious by setting forth the facts upon which he based his belief that the statement was true. See id. at (IV). Fairness demands that the plaintiff, who carries the burden of showing the statement to be false and malicious, be permitted to examine the defendant regarding the facts or reasons upon which he based his belief that the statement was true. Plaintiff should be allowed to submit evidence to show that defendant's reasons are false and his belief is unreasonable and, therefore, malicious.

Defendant admitted he should not have made the statement concerning professional jealousy because he could not prove it to be true. He did not, however, admit it was false and malicious. Those issues remained to be tried and the court erred in precluding plaintiff from

introducing evidence relating to those issues.

4. Defendant denied he was referring to the plaintiff when he made the comment to the reporter concerning burning draft cards, etc. He claimed he was commenting about other members of plaintiff's generation and, moreover, that he and the reporter were no longer discussing the Schecter-Morrow controversy at that point in the conversation. Essentially, defendant asserted the newspaper article inaccurately portrayed him as referring to the plaintiff. Because the accuracy of the article was attacked by defendant, plaintiff attempted to impeach defendant's assertion of inaccuracy by cross-examining defendant concerning the contents of the remainder of the newspaper article. Plaintiff argues the trial court precluded him from conducting a thorough examination of defendant on the accuracy of the article. To the contrary, the record shows plaintiff was adequately permitted to question defendant concerning the content of defendant's conversation with the reporter and the contents of the article.

5. The allegedly slanderous statements at issue in this case were made three days before the newspaper article reporting the statements was published on October 26, 1981. On November 18, 1981, defendant introduced a resolution at the meeting of the Department of General Practice of Doctors Hospital to reprimand and censure plaintiff for actions which adversely affected Doctors Hospital. Plaintiff argues the court erred in excluding evidence concerning the censure resolution because such evidence is relevant to defendant's state of mind and shows continuing hostility toward plaintiff.

Evidence of extraneous hostile acts or remarks by the defendant, while not pertaining directly to the slanderous statement at issue, nevertheless may be relevant to the issue of malice because "it is competent to show the state of mind of the parties *at the approximate time of the remarks,* and is of probative value." (Cit. and punctuation omitted). *Savannah Bank &c. Co. v. Sumner,* 174 Ga. App. 229, 232 (329 SE2d 910) (1985). However, extraneous statements that are neither timely nor pertinent regarding the issue of malice in the alleged defamatory remark are properly excluded. Id. at (2). The censure resolution was proposed by defendant over three weeks after he made the statements at issue in the case. Also, the record shows the resolution was proposed only after plaintiff had submitted to the committee, on the same day, a resolution concerning defendant's professional behavior. Given the intervening time and events, plaintiff failed to show that defendant's resolution is relevant to the earlier, allegedly slanderous, statements. The trial court did not err in excluding such evidence.

6. For reasons set forth in Divisions 2 and 3 of this opinion, we hold the trial court improperly denied plaintiff's motion for new trial.

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED OCTOBER 17, 1988 —
REHEARINGS DENIED NOVEMBER 1, 1988 — 

*Stanley M. Lefco*, for appellant.
*Mackay, Cordes, Daniel & King, James A. Mackay, David L. King, Jr.*, for appellee.