## A08A2038. EVANS v. THE SANDERSVILLE GEORGIAN, INC. et al.

### (675 SE2d 574)

DOYLE, Judge.

Tommy L. Evans, Sr., appeals from the Superior Court of Hancock County's order granting summary judgment in favor of The Sandersville Georgian, Inc.[1] ("the Georgian"), on his claims of libel,[2] invasion of privacy, intentional infliction of emotional distress, and "intentional interference with prospective employment relations." Finding no error, we affirm.

"On appeal from the grant of summary judgment[,] this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact. . . ."[3] "In moving for summary judgment, a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out . . . that there is an absence of evidence to support any essential element of the nonmoving party's case."[4] Rather than resting on its pleadings, the nonmoving party "must point to specific evidence giving rise to a triable issue."[5]

Viewed in this light, the record reveals that the April 20, 2006 edition of The Sparta Ishmaelite ("the Ishmaelite"), which is published by the Georgian, contained a letter to the editor, which is the subject of this case. The letter was written by R. Allen Haywood, who formerly worked for the Ishmaelite as an editor and reporter.[6] The letter was entitled, "Council Must Continue to Say 'No,' " and stated that Haywood was concerned the Sparta City Council would rehire Evans as an employee of the Sparta police department. Haywood explained that he was concerned because Evans had "pocketed insurance company settlement checks" after he sued the City on two occasions while employed as a police officer. Haywood maintained that Evans's lawsuits were settled "quickly and quietly" after his brother William was elected mayor. Haywood characterized the lawsuits as "lame" and "frivolous," and he opined that they were settled because the City's insurance company would "settle lawsuits 'out-of-court' rather than shell-out 'big money' in attorney fees and court costs." He also explained that Evans's brother Ronnie, who

---

[1] Evans also listed a John Doe defendant.

[2] Evans's complaint alleges defamation, but because his claims specifically relate to a published newspaper article, we analyze his claim under OCGA § 51-5-2 (newspaper libel).

[3] (Punctuation omitted.) *Lucas v. Cranshaw*, 289 Ga. App. 510 (659 SE2d 612) (2008).

[4] (Punctuation omitted.) *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 556 (610 SE2d 92) (2005).

[5] (Punctuation omitted.) Id.

[6] Haywood is not a party to this litigation.

was serving as police chief at the time, was a co-plaintiff in one of the lawsuits, and he stated that Ronnie and William had attempted to have Evans rehired without the Council's approval.

Haywood opined that rehiring Evans "would open the door to a future lawsuit," and the City would not have the "ability to discipline or fire [Evans] in the future without facing another lawsuit and settlement payment." Haywood implored the Council not to rehire Evans, ending his letter with the statement, "[i]f Sparta needs another policeman, let's find a certified officer that's interested in serving the people . . . and not in suing us!"

Evans filed suit against the Georgian, and the Georgian moved for summary judgment. Attached to the response to the summary judgment motion was the affidavit of Robert E. Tribble, the president and chief operating officer of the Georgian, who testified that neither he nor any employee of the Georgian had any actual knowledge of the falsity of any statement in the letter, and publication of the letter was done without malice. Evans responded to the motion, attaching his own affidavit and the affidavits of Felicia Evans, Charles Jones, and Richard Evans, all of whom claimed that Haywood routinely included "negative," "biased," and "unfair" reports about Evans and his brothers when he was the editor of the Ishmaelite. Each affiant also recounted a statement made by Haywood that he would continue to report negative stories about the Evanses because the stories sold newspapers and made him money.

In granting the Georgian's motion for summary judgment, the trial court determined that there were no material facts upon which a jury could find "actual malice" on the part of the Georgian in publishing the article. Evans appealed.

1. A written defamatory statement is actionable as libel.[7] "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel."[8] "[I]n determining whether a newspaper article is libelous, it is necessary to consider the entire article in order to arrive at its true meaning."[9]

The Georgian claims the defense of privilege in relation to this editorial,[10] and Evans admits that he is a public figure for the

---

[7] See *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 688 (2) (500 SE2d 1) (1998).

[8] OCGA § 51-5-2 (a).

[9] (Punctuation omitted.) *Lucas*, 289 Ga. App. at 513 (1).

[10] See OCGA § 51-5-7 (9) ("[c]omments upon the acts of public men or public women in their public capacity . . ." are deemed privileged).

purpose of this suit. Thus, the action is subject to the law as announced in *New York Times Co. v. Sullivan*,[11] and to avoid summary judgment, Evans must make a showing with clear and convincing evidence "that the statements complained of were made with 'actual malice' — that is, with knowledge that they were false or with reckless disregard for their truth or falsity."[12] To show reckless disregard, Evans must provide "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."[13]

Evans argues that the affidavit was insufficient to pierce the allegations of the complaint with respect to actual malice. Here, Tribble averred that he and the other employees of the Georgian did not have actual knowledge that any statement in the letter was false and did not publish the letter with reckless disregard to any falsity because they read the letter to contain statements of opinion rather than statements of fact. Furthermore, the Georgian argued that Evans could not prove actual malice because the factual statements included in the opinion were true. Thus, the burden shifted to Evans to affirmatively show that a question of fact existed for the jury.[14]

Evans argues that he presented sufficient facts to overcome summary judgment on the issue of actual malice because he presented evidence that Haywood intentionally published negative coverage of him and his family, and Haywood's letter contained libelous characterizations of Evans's lawsuits and previous record as a police officer. Evans does not dispute the facts that (1) his brother is mayor; (2) his other brother is chief of police; and (3) he filed two lawsuits against the City of Sparta, which were settled in his favor before going to trial. The Georgian contends that the derogatory portions of Haywood's letter are not statements of fact, but statements of opinion that are not actionable, while Evans contends that opinion is not a defense to libel. Because "expressions of opinion may often imply an assertion of objective fact,"[15] there is no

> separate constitutional privilege [that] limit[s] the application of state defamation laws for any words that might be labeled opinion. . . . The dispositive question in such a

---

[11] 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964).

[12] *Stange v. Cox Enterprises*, 211 Ga. App. 731, 732 (2) (440 SE2d 503) (1994).

[13] (Punctuation omitted.) Id.

[14] See *Bollea*, 271 Ga. App. at 556; see, e.g., *Gardner v. Boatright*, 216 Ga. App. 755, 756 (455 SE2d 847) (1995).

[15] (Punctuation omitted.) *Bellemeade, LLC v. Stoker*, 280 Ga. 635, 638 (631 SE2d 693) (2006).

situation was whether a reasonable factfinder could conclude that the statements claimed to be opinion implied an assertion of defamatory facts and, if so, whether it was sufficiently factual to be susceptible of being proved true or false. [Thus], a statement of opinion is actionable as defamatory if it can reasonably be interpreted as stating or implying defamatory facts about the plaintiff and, if so, if the defamatory assertions are capable of being proved false.[16]

In *Webster v. Wilkins*,[17] we determined that a newspaper's publication of the defendant's statement that the mother of his child was unfit to have a child was not actionable because it was "a wholly subjective opinion not capable of proof or disproof. . . ." We found unpersuasive the plaintiff's reasoning that the statement could be construed to mean that she was legally unfit to have custody of her child.[18] Similarly, in *Collins v. Cox Enterprises*,[19] the plaintiff asserted a libel claim against the defendant based on an editorial that stated in part:

Once, his name was John Collins. But in a deeply cynical and revealing act, he changed it to John Frank Collins during the gubernatorial term of Joe Frank Harris, believing that if he couldn't be elected on his merits, maybe he could fool voters into putting him into power.[20]

We affirmed the trial court's order granting a judgment on the pleadings, holding that the editorial was not actionable because it did not constitute an objective fact that could be proved false.[21] We are not persuaded by Evans's argument that the characterization of his lawsuits as frivolous or lame is equivalent to saying that the lawsuits were frivolous as a matter of law.

[T]he average reader, construing the statement[s] in the context of the entire article, would have taken the statement[s] for what [they were], . . . subjective, hyperbolic opinion that cannot be proved to be true or false and that

---

[16] (Citation and punctuation omitted.) Id.; see also *Webster v. Wilkins*, 217 Ga. App. 194, 195-196 (1) (456 SE2d 699) (1995).

[17] 217 Ga. App. at 194-196 (1).

[18] See id. at 195 (1).

[19] 215 Ga. App. 679 (452 SE2d 226) (1994).

[20] (Punctuation omitted.) Id. at 679.

[21] See id. at 680.

concerns a matter on which reasonable people might differ. . . .[22]

Furthermore, to the extent that Evans's evidence shows that Haywood disliked his family personally or politically, that evidence does not show actual malice in the *New York Times* sense — "imposing liability on the basis of the defendant's hatred, spite, ill will, or desire to injure is clearly impermissible."[23] Finally, Evans's contention that the final sentence of the letter — "[i]f Sparta needs another policeman, let's find a certified officer that's interested in serving the people . . . and not in suing us" — is libelous because it infers that he is not a certified officer is a strained reading of the sentence, unsupported by its grammatical structure. A plain reading of the sentence shows that Haywood is making a distinction between certified officers who are litigious and those who are not; the inference of the sentence is that Evans *is not* interested in serving Sparta and *is* interested in suing the City, which, again, is clearly the author's opinion, and not an actionable statement. We "will not hunt for a strained construction in order to hold the words used as being defamatory."[24] Thus, Evans failed to establish actual malice on the part of the Georgian because the statements at issue are not "susceptible to being proved true or false," and the trial court did not err in granting summary judgment to the Georgian as to Evans's libel claim.[25]

2. Pretermitting whether Evans sufficiently enumerated as error the trial court's grant of summary judgment to the Georgian on his claims of invasion of privacy, intentional infliction of emotional distress, and "intentional interference with prospective employment relations," because he has failed to establish actual malice with regard to the libel claim, his other claims also fail.[26]

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

---

[22] *Webster*, 217 Ga. App. at 195 (1); see also *Lucas*, 289 Ga. App. at 513-514 (1) (editorial characterization of a construction company's destruction of a hilltop to acquire fill dirt as "rape" of public land was not actionable). Compare with *Eidson v. Berry*, 202 Ga. App. 587, 588-589 (415 SE2d 16) (1992) (finding actionable an editorial in which the author contended that, in his opinion, a city attorney was responsible for tape recording and leaking to the press a conversation between other officials and the act of tape recording constituted a violation of federal law because the author conceded he had no knowledge about who created the tape or whether the act of recording the conversation violated federal law).

[23] (Punctuation omitted.) *Bollea*, 271 Ga. App. at 558 (1).

[24] (Punctuation omitted.) *Webster*, 217 Ga. App. at 195 (1).

[25] *Bellemeade, LLC*, 280 Ga. at 638.

[26] See *Smith v. Henry*, 276 Ga. App. 831, 834 (2) (625 SE2d 93) (2005) ("the privilege contained in OCGA § 51-5-7 applies not only to slander and libel claims, but also to 'any other tort based on communications' ").

*Clifton Boone*, for appellant.
*Tyron C. Elliott*, for appellees.