A10A1745. EXECUTIVE EXCELLENCE, LLC et al. v. MARTIN
BROTHERS INVESTMENTS, LLC et al.
A10A2143, A10A2144. SOUTHERN TRADITION
INVESTMENTS, LLC et al. v. EXECUTIVE EXCELLENCE, LLC
et al.; and vice versa.
(710 SE2d 169)

MCFADDEN, Judge.

These consolidated appeals arise out of the rescission of two written contracts for the purchase and sale of real property. The sellers and property owners were Executive Excellence, LLC, its principal owner Richard R. Fritts, and Sterling Trust Company (collectively "sellers"). The buyers under assignments were Southern Tradition Investments, LLC and Martin Brothers Investments, LLC (collectively "buyers"). In Case No. A10A1745, the sellers appeal the trial court's order granting summary judgment against them as to their claims for slander of title. In Case Nos. A10A2143 and A10A2144, the buyers and sellers, respectively, appeal the trial court's orders awarding attorney fees against each party. We affirm the trial court's summary judgment order because the sellers failed to assert actionable slander of title claims. As to the attorney fees, we affirm in part and reverse in part.

> We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. A defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004). See also OCGA § 9-11-56 (c), (e).

So construed, the record evidence shows that Executive, operated by Fritts, was the owner of a 15-acre tract of undeveloped land in Hall County. A separate four-acre tract was owned by Sterling Trust as Custodian for the Benefit of Richard R. Fritts. On or about December 26, 2006, Fritts executed two contracts to sell the respective tracts to a third party, Sund Enterprises. Although Sterling Trust was listed as the seller on the contract for the four-acre tract, the contract was not executed by any authorized representative of

Sterling Trust.

Sund Enterprises later assigned its rights under the contract to purchase the 15-acre tract to Southern Tradition and assigned its rights under the contract to purchase the four-acre tract to Martin Brothers. Both contracts contained a zoning contingency that provided as follows:

> This contract is conditioned on the ability of the Buyer to obtain the rezoning of said property to zoning classification pursuant to the *City of Oakwood (Zoned C-2) or Hall County (Zoned HB)* Zoning Resolutions so as to permit the construction of Commercial/Highway Business on the property. . . . Buyer agrees to apply for said rezoning within Sixty (60) days of the date of this agreement and Seller agrees to cooperate with the Buyer in obtaining such rezoning. . . . *It is expressly understood that in the event a final determination is not made on said application by the City of Oakwood or Hall County, on or before April 1, 2007, either party may rescind this contract by notifying the other party as provided for herein[.]*

(Emphasis supplied.) The contract provided that Southern Tradition and Martin Brothers would have until February 26, 2007 to file applications for rezoning in Hall County; they filed the applications on February 23. Fritts executed an owner authorization in support of Southern Tradition's application. Fritts, however, refused to execute an owner authorization in support of Martin Brothers's rezoning application, contending that Sterling Trust had not agreed to the contract and that he lacked authority to sign the documents on behalf of Sterling Trust. Martin Brothers did not send the contract or zoning documents to Sterling Trust for approval and execution.

The Hall County Planning Commission established a schedule for the procedural handling of the applications. According to the schedule, Southern Tradition's rezoning application would not be heard until the Planning Commission's meeting on April 2, 2007 and the Board of Commissioners meeting on April 26, 2007, which was after the rezoning deadline designated in the contracts. On March 28, 2007, counsel for Southern Tradition and Martin Brothers sent letters to Fritts, stating that they were unilaterally removing the zoning contingency from the contracts. Fritts objected, asserting that the zoning contingency could not be unilaterally removed.

Southern Tradition and Martin Brothers failed to obtain a final determination on their rezoning applications by the April 1, 2007 deadline. On April 25, 2007, counsel for Executive sent a letter to counsel for Southern Tradition rescinding the contract based upon

the failure of the zoning contingency. Subsequently, on May 16, 2007, counsel for Sterling Trust sent a letter to counsel for Martin Brothers, advising that the purported contract was null and void since it was not approved or accepted by Sterling Trust and, to the extent that a contract existed, it was rescinded due to the failure of the zoning contingency.

Southern Tradition and Martin Brothers continued to pursue a rezoning of the properties and enforcement of the contracts. At the Hall County Board of Commissioners meeting held on April 26, 2007, the agent for Southern Tradition and Martin Brothers allegedly stated to third parties that they intended to pursue enforcement of the contracts for the properties "in order to teach [Fritts] a lesson and that [they] had enough money to do so." At a subsequent Board of Commissioners meeting on May 24, 2007, the Hall County attorney, who also was a partner at the law firm representing Southern Tradition and Martin Brothers, openly stated that there was active litigation involving the properties. On October 8, 2007, the agent for Southern Tradition and Martin Brothers allegedly stated to third parties that they "had enough money to keep the [properties] tied-up in litigation for the next 5 to 10 years."

Southern Tradition filed suit against Executive, asserting claims for contract reformation, specific performance, and attorney fees. Southern Tradition alleged that the April 1 rezoning deadline was a scrivener's error and that it was entitled to have the contract reformed to reflect the parties' intent to provide a later deadline of June 1, 2007. Similarly, Martin Brothers filed suit against Fritts and Sterling Trust, asserting claims for contract reformation, declaratory judgment, mandatory injunction, specific performance, fraud, and attorney fees. Martin Brothers likewise alleged that the April 1 rezoning deadline was a scrivener's error that did not embody the parties' intent to provide for a June 1, 2007 deadline. In addition, Martin Brothers alleged that Fritts had fraudulently misrepresented that he had authority to execute the contract to sell the property on behalf of Sterling Trust. In conjunction with filing the lawsuits, Southern Tradition and Martin Brothers filed notices of lis pendens identifying the lawsuits, the relief sought, and the properties subject to the lawsuits.

Executive, Fritts, and Sterling Trust filed answers denying the material allegations in the complaints. They also filed counterclaims seeking damages and attorney fees for slander of title, pertinently alleging that Southern Tradition and Martin Brothers had maliciously impugned their title to the properties by filing the notices of lis pendens and by making the statements to third parties at the Board of Commissioners meetings.

Executive, Fritts, and Sterling Trust filed a motion for summary

judgment as to the claims of the Southern Tradition and Martin Brothers lawsuit. Southern Tradition and Martin Brothers later filed a voluntary dismissal of their claims without prejudice. Southern Tradition and Martin Brothers thereafter filed a motion for summary judgment as to the counterclaim, which the trial court granted.

Following the disposition of the substantive claims of the lawsuit, the parties filed motions for attorney fees under OCGA § 9-15-14. The trial court also granted each of these motions, finding that each party had presented claims that lacked substantial justification and failed to set forth a justiciable issue of law or fact. The instant appeals ensued.

## Case No. A10A1745

1. Executive, Fritts, and Sterling Trust contend that the trial court erred in granting summary judgment in favor of Southern Tradition and Martin Brothers as to their counterclaims for slander of title. The contention is without merit.

Under OCGA § 51-9-11, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." To establish a claim for the slander of title tort in accordance with the statute, the plaintiff must prove: (1) publication of slanderous or libelous statements; (2) that the statements were false and malicious; (3) that the plaintiff sustained special damages thereby; and (4) that the plaintiff possessed an estate in the property slandered or libeled. See *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 583 (6) (583 SE2d 235) (2003). In this case, the slander of title claim alleged that Southern Tradition and Martin Brothers had wrongfully filed and maintained notices of lis pendens against the properties and had also made false and malicious representations to third parties regarding the property dispute.

(a) *Lis Pendens.* The notices of lis pendens filed by Southern Tradition and Martin Brothers in conjunction with their complaints were privileged and therefore, could not serve as the basis for the slander of title claim. The privilege is set out at OCGA § 51-5-8:

> All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

A valid and effective lis pendens filed in a court of competent

jurisdiction to provide notice that certain real property is directly involved in the pending suit falls within the purview of this statutory privilege. See *Alcovy Properties v. MTW Investment Co.*, 212 Ga. App. 102, 103 (1) (441 SE2d 288) (1994); *Panfel v. Boyd*, 187 Ga. App. 639, 646 (4) (371 SE2d 222) (1988). Here, the lis pendens were properly filed in the trial court in conjunction with the lawsuits that were based upon the property contract disputes. The lis pendens identified the properties that were directly involved in the pending suits. As such, the lis pendens were proper, privileged, and could not be deemed as constituting a slander of title. See id.

Executive, Fritts, and Sterling Trust nevertheless contend that Southern Tradition and Martin Brothers committed the tort by continuing to maintain the lis pendens after they filed a voluntary dismissal without prejudice as to their claims in the lawsuit. Their contention is without merit.

"The phrase 'lis pendens' means, literally, pending suit." (Citation omitted.) *Vance v. Lomas Mtg. USA*, 263 Ga. 33, 35 (1) (426 SE2d 873) (1993). In this regard, our Supreme Court has held that a valid notice of lis pendens remains in effect until a final judgment has been entered in the action and the time for appeal has expired. See id. at 36 (1). OCGA § 44-14-612 requires the clerk of the court to indicate on the face of the lis pendens record the dismissal, settlement, or final judgment entered in the underlying action, along with the book and page of the records where the final order or judgment is found. Accordingly, after a valid lis pendens has been filed, it is not required to be physically cancelled or removed upon the entry of a disposition in the underlying case; rather, the disposition is required to be marked on the face of the lis pendens by the court clerk. See *Bellamy v. Fed. Deposit Ins. Corp.*, 236 Ga. App. 747, 753-754 (4) (d) (512 SE2d 671) (1999). "The statute does not address the status of a recorded lis pendens notice on which no such indication regarding a dismissal, settlement, or final judgment entered in the underlying action is made, notwithstanding that such an entry should have been made pursuant to the statute." *Vance*, supra at 36 (1).

Although Southern Tradition and Martin Brothers filed a voluntary dismissal without prejudice as to their claims presented in the lawsuits, such did not finalize all claims in the lawsuit since the counterclaim for slander of title filed by Executive, Fritts, and Sterling Trust remained pending for resolution. But even if we were to hold that the trial court's clerk should have marked the voluntary dismissal on the face of the notices of lis pendens in accordance with OCGA § 44-14-612, the clerk's failure to do so would not authorize a recovery against Southern Tradition and Martin Brothers under a slander of title claim. The filed notices of lis pendens were valid and were privileged. See *Alcovy Properties*, supra; *Panfel*, supra. There is

no merit to appellants' argument that Southern Tradition and Martin Brothers were required to physically remove the notices of lis pendens from the records. See *Vance*, supra; *Bellamy*, supra. Accordingly, the trial court's grant of summary judgment on this basis was proper.

(b) *Statements to Third Parties.* The slander of title claim was further based upon statements allegedly made by the agents of Southern Tradition and Martin Brothers to third parties at Hall County Board of Commissioners meetings. In support of their claim, the sellers presented an affidavit from Winston Clark, who attested that he attended the Board of Commissioners meetings on behalf of Executive. Clark further attested that in the presence of himself and third parties at the Board of Commissioners meeting held on April 26, 2007, the agent for Southern Tradition and Martin Brothers stated that they intended to pursue enforcement of the contracts for the properties "in order to teach [Fritts] a lesson and that [they] had enough money to do so." Clark also attested that at a subsequent Board of Commissioners meeting on May 24, 2007, the Hall County attorney, who also was a partner at the law firm representing Southern Tradition and Martin Brothers, openly stated that there was active litigation involving the properties. In addition, Clark recalled that again on October 8, 2007, the agent for Southern Tradition and Martin Brothers stated that Southern Tradition and Martin Brothers "had enough money to keep the [properties] tied-up in litigation for the next 5 to 10 years."

Southern Tradition and Martin Brothers contend that the alleged statements were not false and did not reflect upon or impugn appellants' title to the property.

(i) We agree with the trial court that the attorney's alleged statement at the May 24, 2007 meeting did not amount to actionable slander of title. Appellants contend that the attorney's statement falsely informed third parties that there was active litigation involving the properties, when in fact the lawsuits had not yet been filed. The lawsuits were filed on May 30, 2007 and May 31, 2007 respectively, approximately one week after the alleged statement was made. Nevertheless, "[d]efamation law overlooks minor inaccuracies and concentrates upon substantial truth. A statement is not considered false unless it would have a different effect on the mind of the listener from that which the pleaded truth would have produced." (Punctuation and footnotes omitted.) *Vito v. Inman*, 286 Ga. App. 646, 648 (1) (649 SE2d 753) (2007). It is undisputed that the parties were then embroiled in a contract dispute over the purchase and sale of the properties when the alleged statement was made. The lawsuits were filed shortly thereafter, presenting active litigation. Under these circumstances, the attorney's statement presented a minor

factual error which did not go to the substance of the statement and did not render the communication false for defamation purposes. See id.

(ii) We also agree with the trial court that the April and October 2007 statements do not constitute slander to title. As previously noted, an action for slander to title must be based on the uttering of false words. *Latson*, supra at 114. Here, the trial court correctly held that neither of the statements in question was false. At the time the statements were made, whether or not the contracts were still enforceable or had been lawfully terminated was in dispute between the parties. There was no judgment from a court of law resolving that contractual issue, and the statements simply asserted that the buyers intended to pursue enforcement of the contracts and had enough money to keep the properties tied up in litigation for many years. Indeed, consistent with the statements, the parties are still involved in litigation some four years after the statements were uttered. Moreover, such statements about the buyers' motivations and intentions were nothing more than "subjective, hyperbolic opinion that cannot be proved to be true or false[.]" *Evans v. The Sandersville Georgian*, 296 Ga. App. 666, 669 (1) (675 SE2d 574) (2009). And because the "statements are merely expressions of opinion and hyperbole about which reasonable people might differ and which cannot be proved to be true or false, they are not actionable as being defamatory." *Kirsch v. Jones*, 219 Ga. App. 50, 51 (1) (464 SE2d 4) (1995). Accordingly, the trial court correctly granted summary judgment to the buyers as to that slander to title claim, and that summary judgment ruling must be affirmed.

### Case No. A10A2143

2. Southern Tradition and Martin Brothers contend that the trial court erred in granting the motion for attorney fees filed by Executive, Fritts, and Sterling Trust under OCGA § 9-15-14. We agree and conclude that the trial court's ruling was not authorized.

OCGA § 9-15-14, governing the award of attorney fees, pertinently provides as follows:

> (a) In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. . . .

(b) The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.] . . . As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

. . .

"To the extent [a] trial court's order on attorney fees was based on OCGA § 9-15-14 (a), it must be sustained if there is any evidence to support it. To the extent the award was based on OCGA § 9-15-14 (b), it must be sustained unless the trial court abused its discretion." (Citation and punctuation omitted.) *Robinson v. Glass*, 302 Ga. App. 742, 744 (691 SE2d 620) (2010).

In this case, the trial court awarded attorney fees to Executive, Fritts, and Sterling Trust based upon its finding that the claims presented in the respective complaints filed by Southern Tradition and Martin Brothers lacked substantial justification and contained no justiciable issue of law or fact. The crux of those claims is the assertion that the April 1 rezoning deadline in the contracts arose from a scrivener's error, and that the parties actually intended a June 1 deadline. Indeed, equity affords a remedy if it can be shown that the contract terms fail to "express the true intention of the parties." *Brannen v. Gulf Life Ins. Co.*, 201 Ga. App. 241, 243 (3) (410 SE2d 763) (1991). Contrary to the trial court's ruling, the buyers have made an evidentiary showing which, if accepted by a factfinder, would have authorized the requested remedy of contract reformation.

The undisputed testimony of Frank Simpson, the buyers' real estate agent, is that the parties discussed closing dates and reached "an understanding from everybody" that the closing would take place "45 days after the rezoning." He testified that the parties' negotiations as to the closing date focused on the amount of time the buyers would be allowed for preparation of the rezoning application. The parties agreed that the buyers would have 60 days, until February 26. It was then Simpson's responsibility to calculate the rezoning deadline by determining the amount of time needed to complete a rezoning process initiated on February 26. The zoning process entails a published notice, a zoning commission hearing, and a county commission hearing. According to his testimony, Simpson performed the calculation using a chart of meeting dates and

deadlines provided by the Hall County zoning board. Simpson miscalculated, apparently failing to correctly analyze the consequences of a rescheduled meeting.

That testimony would have authorized the trial court to conclude that the parties intended the sellers to have 60 days to prepare and file their rezoning application, that they intended to allow sufficient time thereafter for the rezoning process to run its course, that the parties relied on Simpson to calculate the time needed, that he miscalculated and set an unattainable deadline, and that — in their mutual reliance on his mistaken calculation — the parties were "laboring under the same misconception." *Yeazel v. Burger King Corp.*, 241 Ga. App. 90, 94 (2) (526 SE2d 112) (1999). If the trial court had been so persuaded, it would have been "authorized to grant reformation of contract." *Brannen*, supra at 244 (4). Accord *Yeazel*, supra; see also OCGA § 23-2-20 et seq.

Moreover, we see nothing suspicious in the fact that the buyers attempted to waive the rezoning contingency before they raised the issue of reformation. Notwithstanding that the language of the agreement empowers the sellers to insist upon it, the buyers correctly note in their complaint that there was "no possible benefit flowing to the seller under the zoning contingency." The buyers' attempt to waive the zoning contingency was an offer to accept additional business risks in order to avoid or simplify this litigation. It was an unexceptionable attempt to quickly resolve this dispute.

Finally, it is true that the trial court would have been authorized to reject the buyers' claim that Fritts misrepresented his authority over Sterling Trust on the basis that the buyers' reliance on those misrepresentations was not justified. But regardless of whether the buyers ought to have further investigated the extent of Fritts's legal authority over the trust, the trial court would have been authorized to conclude that the buyers reasonably relied on Fritts's assurances that he had sufficient power over the trust to cause it to cooperate. (Indeed such a conclusion would be reinforced by the fact that the sellers have conducted this litigation in complete harmony and refer to themselves in their appellate briefs as the "Fritts Parties.") "Ordinarily the question whether the complaining party could have ascertained the falsity of the representations by proper diligence is for determination by the jury." *Elliott v. Marshall*, 179 Ga. 639, 640 (176 SE 770) (1934). Accord *Evans Toyota v. Cronic*, 233 Ga. App. 318, 320 (1) (a) (503 SE2d 358) (1998), overruled on other grounds by *Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (547 SE2d 637) (2001); *State Farm Fire & Cas. Co. v. Fordham*, 148 Ga. App. 48, 51 (1) (250 SE2d 843) (1978).

"For a mistake to be relievable in equity by reformation, it must be mutual, or else mistake on the part of one to the contract and

fraud on the part of the other." (Citation and punctuation omitted.) *Prince v. Friedman*, 202 Ga. 136, 138-139 (1) (42 SE2d 434) (1947). See also OCGA § 23-2-21; *A. J. Concrete Pumping v. Richard O'Brien Equip. Sales*, 256 Ga. 795, 796 (1) (353 SE2d 496) (1987). In this case, because there is evidence of mutual mistake, the buyers could have reasonably believed that a court would accept their claims, there was substantial justification for those claims, and there is no basis for a finding that the buyers simply brought such claims for delay or harassment. Consequently, the attorney fees award against the buyers must be reversed.

### Case No. A10A2144

3. In this cross-appeal, Executive, Fritts, and Sterling Trust challenge the trial court's decision granting the motion for attorney fees filed by Southern Tradition and Martin Brothers. The trial court's award of attorney fees was based upon its finding that the counterclaim lacked substantial justification and failed to present a justiciable issue of fact or law.

We agree with the trial court's finding to the extent that we too have concluded, in Division 1 (a) above, that the slander of title claim based upon the privileged lis pendens notices was without merit. Executive, Fritts, and Sterling Trust nevertheless argue that the assessment of attorney fees was precluded under OCGA § 9-15-14 (c) since they asserted the claim in a good faith attempt to establish a new legal theory in Georgia jurisprudence. The trial court rejected their argument. In light of the controlling precedent clearly establishing that a valid lis pendens is privileged, see *Alcovy Properties*, supra; *Panfel*, supra, we agree that the sellers' argument is unavailing. Accordingly, the trial court's attorney fee award predicated on this basis was authorized. See *Brunswick Floors v. Carter*, 199 Ga. App. 110, 112 (3) (403 SE2d 855) (1991).

Likewise, we agree that the trial court correctly awarded attorney fees as to the slander of title claim based upon the May 2007 statement discussed above in Division 1 (b) (i). As explained in that Division, the statement was a minor inaccuracy that cannot constitute slander to title and was subject to summary adjudication. Because that claim was without substantial justification, the trial court did not err in awarding attorney fees as to that claim.

However, we reach a different conclusion as to the slander of title claims predicated upon the statements made in April and October 2007. As explained in Division 1 (b) (ii) above, we have affirmed the grant of summary judgment as to those claims. But the fact that the dissent deems those claims viable shows that the sellers could have reasonably believed that a court would accept their

claims, there was substantial justification for them, and there is no basis for a finding that the sellers brought the claims for delay or harassment. Accordingly, the trial court erred in awarding attorney fees as to the claims deemed viable by the dissent.

"Attorney's fees and expenses of litigation awarded under [OCGA § 9-15-14] shall not exceed amounts which are reasonable and necessary for defending or asserting the rights of a party." OCGA § 9-15-14 (d). Where a party is entitled to recover fees on only part of his claim, he must present proof to show what portion of the fees was allocable to that claim. See *Duncan v. Cropsey*, 210 Ga. App. 814, 815-816 (2) (437 SE2d 787) (1993); *Augusta Tennis Club v. Leger*, 186 Ga. App. 440, 443 (5) (367 SE2d 263) (1988). Since the attorney fees award to Southern Tradition and Martin Brothers was valid only as to the slander of title claims based upon the privileged lis pendens and the statement made in May 2007, we vacate the award and remand this case for further proceedings to determine the amount of fees attributable to those claims.

*Judgment affirmed in Case No. A10A1745. Judgment reversed in Case No. A10A2143. Judgment affirmed in part, reversed in part, vacated in part and case remanded with instruction in Case No. A10A2144. Smith, P. J., Barnes, P. J., Blackwell and Dillard, JJ., concur. Miller, P. J., and Phipps, P. J., concur in part and dissent in part.*

MILLER, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent as to Divisions 1 (b) (ii) and 2 of the majority opinion. I otherwise concur fully in the rest of the opinion.

1. Contrary to the majority's view, I believe that the record evidence supports a valid slander of title claim and precludes the entry of summary judgment based upon the April and October statements made by the agent for Southern Tradition and Martin Brothers to third parties.

Under OCGA § 51-9-11, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." In determining whether a statement is defamatory or slanderous, the statement must be viewed in context. See *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1) (456 SE2d 699) (1995).

> As a defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. In doing so, the courts will not hunt for a strained construction in order to hold the words used as being defamatory. In considering whether a [statement] is

defamatory as a matter of law, any relevant extrinsic circumstances will be considered, because a statement may carry a defamatory meaning only by reason of extrinsic fact or circumstances by use of innuendo, inducement and colloquium.

(Citations and punctuation omitted.) *Stalvey v. Atlanta Business Chronicle*, 202 Ga. App. 597, 599 (1) (414 SE2d 898) (1992). Generally, whether a published statement is defamatory is a question for the jury. Id.

The sellers' slander of title claim pertinently alleged that the agent for Southern Tradition and Martin Brothers made statements to third parties that Southern Tradition and Martin Brothers intended to pursue enforcement of the contracts for the properties "in order to teach [Fritts] a lesson" and that they "had enough money to keep the [properties] tied-up in litigation for the next 5 to 10 years." Southern Tradition and Martin Brothers contend that the alleged statements were not false and did not reflect upon or impugn the sellers' title to the property. The majority finds this argument persuasive. I disagree.

While the majority appears to view the statements narrowly, the legal standard for evaluating a slander of title claim requires that the statements be viewed in context, considering the circumstances in which the statements were made. See *Webster*, supra, 217 Ga. App. at 195 (1); *Stalvey*, supra, 202 Ga. App. at 599 (1). When viewed in this context, the statements falsely insinuated that the contracts for the properties were enforceable, when in fact, the contracts had been terminated and were unenforceable based upon their plain, unambiguous terms. Accordingly, to the extent that the statements asserted a false claim of entitlement to enforce the contracts after their lawful terminations, a jury would be authorized to find that the statements were false and that Southern Tradition and Martin Brothers had asserted a false claim to the properties.

Moreover, based upon the statements, a jury would be authorized to find that Southern Tradition and Martin Brothers were acting out of malice, with a purpose to harass the sellers and to bind their property. In addition, the statement's reference to bind or "tie[ ]-up" the properties recognized that a cloud on the title would exist during the pendency of the litigation. As such, the statements could reasonably be construed as having the effect of maliciously impugning the sellers' title to the properties. See OCGA § 51-9-11; *Sanders v. Brown*, 257 Ga. App. 566, 569 (a) (571 SE2d 532) (2002).

I disagree with the majority's assertion that the statements could not be deemed as false since the parties disputed whether the contracts had been lawfully terminated and the properties were

indeed tied up in litigation for several years after the statements were uttered. Significantly, the statements did not reflect that there was a legitimate dispute as to the lawful termination of the contracts, but rather, that enforcement of the contracts would be pursued "to teach [Fritts] a lesson." And, contrary to the majority's assertion, a jury would be authorized to find that the statements were not merely expressions of opinion or hyperbole. Based upon the evidence, a jury could determine that Southern Tradition and Martin Brothers proceeded to act in accordance with their malicious plan to cloud the properties' title during the pendency of the protracted litigation. Their actions taken to carry out the plan tended to further establish the slander of title claim and supported the sellers' claim for damages in having to defend against a rezoning proceeding and lawsuit that, as reflected by the statements, were pursued for a malicious purpose. Such statements and actions are precisely what the slander of title claim is intended to address. See OCGA § 51-9-11; *Sanders*, supra, 257 Ga. App. at 568-569 (a).

The evidence further established the element of publication to third parties. Clark averred that the April statement was made at a Board of Commissioners meeting, in his presence as well as in the presence of others. Although Clark averred that he was an original member of Executive and that the October statement was made to him, there was evidence reflecting publication of the October statement to third parties, as well. Notably, although Clark was an agent of Executive, there was no evidence that he was an agent of Fritts or Sterling Trust, who had ownership interests over the separate four-acre tract. Consequently, the publication of the statements to Clark was sufficient to establish a valid claim as to Fritts and Sterling Trust. See *Baskin v. Rogers*, 229 Ga. App. 250, 252 (3) (493 SE2d 728) (1997) ("A defamatory matter is published as soon as it is communicated to any person other than the impugned party.") (citations and punctuation omitted). More importantly, while Clark averred that the statement was made to him, he further averred that real estate developers had informed him that the properties were unmarketable as a result of the "statements," in plural, indicating that those third parties had heard each of the statements. As such, the evidence supported the element of publication as to each of the sellers' claims. Id.

The evidence also would permit a finding that the agent for Southern Tradition and Martin Brothers was authorized to make the slanderous statements.

> [U]nder general principles of tort law, the doctrine of respondeat superior does not apply in slander cases, and a principal is not liable for the slanderous utterances of an

> agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff.

(Punctuation and footnote omitted.) *Tootle v. Cartee*, 280 Ga. App. 428, 430 (634 SE2d 90) (2006). Here, the evidence showed that the agent made the statements on behalf of Southern Tradition and Martin Brothers and in furtherance of their stated plan to "tie[ ]-up" or cloud title to the respective properties. Their actions taken to pursue the rezoning and lawsuit after the contracts had been lawfully terminated served as evidence that the statements had been authorized and ratified. See *Jordan v. Hancock*, 91 Ga. App. 467, 472 (2) (86 SE2d 11) (1955) (ruling that one may become liable for slander published by another if the statements were made in pursuance of a common design and purpose).

Since the statements were allegedly made to third parties at the Board of Commissioners meetings, they were made separately from the litigation and thus, were not covered under the litigation privilege. See *Sanders*, supra, 257 Ga. App. at 569 (a). And, since the statements could be construed as expressing malice, as previously explained, the statements were not definitively covered under the qualified privilege set forth in OCGA § 51-5-7, governing statements made in good faith and fair and honest reports. See *Baskin*, supra, 229 Ga. App. at 253 (4).

I further believe that the evidence sufficiently supported the sellers' claim that they sustained special damages as a result of the statements. See OCGA § 51-9-11; *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 583 (6) (583 SE2d 235) (2003).

> Special damages are those which actually flow from a tortious act; they must be proved in order to be recovered. Special damages must be proven with sufficient particularity for the jury to estimate the amount thereof with reasonable certainty; exact figures are not required for proof.

(Citations and punctuation omitted.) *Sanders*, supra, 257 Ga. App. at 569 (b).

Here, the sellers alleged that as a result of the slanderous statements, they sustained special damages in the form of an increased tax liability after their property was rezoned and a decrease in the properties' marketability and values. In his affidavit, Clark attested that Southern Tradition and Martin Brothers continued to pursue the rezoning application over the sellers' objections and after the contracts had been rescinded. As a result, the 15-acre tract was rezoned and the property taxes for the tract increased from

$3,220.50 in 2007 prior to the rezoning to $6,278.51 in 2008 after the rezoning.

Clark further attested that he worked in the construction industry for approximately 30 years and that he assisted Excellence and Sterling Trust in evaluating any purchase offers or contracts pertaining to the properties. Clark stated that he had knowledge of the location, dimensions, and characteristics of the properties; that he had the opportunity to discuss the value of the properties with various real estate professionals; and that he regularly monitored the listings and sales of comparable properties in the area. Clark attested that based upon his knowledge, discussions, and investigation, the subject properties could have been sold in November 2007 with proper marketing for $145,000 per acre. Clark asserted, however, that as a result of the slanderous statements, the properties became unmarketable and licensed realtors have stated that the current value of the properties has depreciated to approximately $80,000 per acre.

In this regard, Clark's affidavit provided opinion evidence showing the decrease in the properties' value after the slanderous statements were made.

> Opinion evidence offered by a non-expert witness as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience, or familiarity with the value of the property in question or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.

(Citations and punctuation omitted.) *Reeves v. Crawford*, 185 Ga. App. 518 (364 SE2d 895) (1988). The attestations in Clark's affidavit laid a proper foundation for admissibility of his opinion as to the properties' decreased value. Although Clark's opinion of value was partly based upon hearsay and information supplied by other real estate professionals, it was not rendered invalid.

> Market value is exclusively a matter of opinion even though expressed as a fact. It may rest wholly or in part upon hearsay, provided the witness has had an opportunity of forming a correct opinion. If it is based on hearsay this would go merely to its weight and would not be a ground for valid objections.

(Citations and punctuation omitted.) *Unified Govt. &c. v. Watson*, 255 Ga. App. 1, 4 (2) (564 SE2d 453) (2002). See also OCGA §

24-9-66.[1] Clark's affidavit reflected that his opinion of value was not a mere conduit for the opinion of others, but rather, was based upon his own knowledge about the properties and his independent investigation. Clark therefore had an opportunity to form a correct opinion of the properties' value and his affidavit was probative of the special damages issue. See id. at 4-5 (2); *Gibbs v. Clay*, 137 Ga. App. 381, 382 (1) (224 SE2d 46) (1976). The aforementioned evidence was sufficient to present a jury question as to the special damages issue. See, e.g., *Sanders*, supra, 257 Ga. App. at 569 (a).[2]

Based upon the foregoing, the evidence presented a valid claim for slander of title. A jury would be authorized to construe the statements as reflecting that Southern Tradition and Martin Brothers asserted a false claim over the sellers' properties after the contracts had been terminated and "tied-up," i.e., impugned, the sellers' titles to the respective properties "in order to teach [Fritts] a lesson" and to be undeservedly vengeful or hostile. See, e.g., *Schecter v. Strickland*, 189 Ga. App. 82, 84 (2) (375 SE2d 93) (1988). In this regard, we must remain mindful of the summary judgment standard: "To prevail at summary judgment, the moving party must demonstrate that there is *no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor*, warrant judgment as a matter of law." (Citations and punctuation omitted; emphasis supplied.) *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004). See also OCGA § 9-11-56 (c), (e). Viewed in the sellers' favor, the evidence regarding the statements presented a genuine issue of material fact as to the slander of title issue. Under the circumstances presented, the jury should not have been precluded from considering the motivation for Southern Tradition's and Martin Brothers's statements and actions, and the trial court was not authorized to usurp the province of the jury where the evidence would support a finding that the statements amounted to slander of title. See, e.g., *Schecter*, supra, 189 Ga. App. at 84 (2). I believe that the trial court's decision granting summary judgment as to this issue was erroneous.

---

[1] OCGA § 24-9-66 provides that "[d]irect testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion."

[2] Southern Tradition and Martin Brothers contend that the instant case is distinguishable from that of *Sanders*, supra, 257 Ga. App. at 569-570 (b), since there was no evidence that the sellers lost any actual contracts for sale of the properties due to the slander of title. Notwithstanding their attempt to distinguish *Sanders*, however, the sellers presented evidence that there was a decrease in marketability of the properties as a result of their inability to give a good and marketable title to the properties during the pendency of the lawsuit. This evidence, along with the opinion evidence calculating the decrease in the properties' value, was sufficient to show with reasonable particularity the special damages that were allegedly sustained. See, e.g., *Sanders*, supra, 257 Ga. App. at 570 (b); *Reeves*, supra, 185 Ga. App. at 518.

2. As to Division 2, I also disagree with the majority's reversal of the trial court's decision granting the motion for attorney fees filed by the sellers under OCGA § 9-15-14. I believe that the trial court's ruling was authorized.

In awarding attorney fees to the sellers, the trial court made a finding that Southern Tradition and Martin Brothers presented claims in their lawsuits that lacked substantial justification and contained no justiciable issue of law or fact. In their complaints, Southern Tradition and Martin Brothers asserted claims for contract reformation, specific performance, and attorney fees. The Martin Brothers complaint also asserted claims for declaratory judgment, mandatory injunction, and fraud. As stated in the trial court's order, these claims rested on Southern Tradition's and Martin Brothers's legally erroneous contentions that they were entitled to unilaterally revise the April 1, 2007 rezoning deadline that was unambiguously set forth in the contracts that were prepared by their agent. The evidence supports the trial court's finding that these claims were meritless and failed to contain a justiciable issue.

The terms of the rezoning contingency and the April 1 deadline were clear and unambiguous. When the terms of a contract are plain and unambiguous, the contract must be enforced as written, so long as it is within the bounds of the law. See *Toy Wright Ventures v. Radlo Foods*, 281 Ga. App. 278, 280-281 (635 SE2d 862) (2006); *Cox v. U. S. Markets*, 278 Ga. App. 287, 289-290 (2) (628 SE2d 701) (2006). The contract clearly gave the sellers the right to rescind the contract "in the event a final determination [was] not made on [the rezoning] application by the City of Oakwood or Hall County, on or before April 1, 2007[.]" When the rezoning deadline was not met, the sellers promptly exercised their right to rescind the contract.

The majority opinion nevertheless finds credence in Southern Tradition's and Martin Brothers's argument that the April 1 rezoning deadline was a scrivener's error and that the parties' intent was to instead provide a June 1 deadline. The uncontroverted evidence, however, reflects that they did not raise any such claim of scrivener's error until after it became apparent that the deadline would not be met. On March 28, 2007, counsel for Southern Traditions and Martin Brothers sent a letter to Executive attempting to unilaterally remove the rezoning contingency from the contracts. Significantly, the letter made no mention of any alleged scrivener's error. Fritts sent a letter in response, which objected to the unilateral attempt to remove the rezoning contingency, and he further averred that the April 1 rezoning deadline was not a mistake.

Longstanding Georgia precedent establishes that

> equity will not decree the reformation of an instrument because of mistake of one of the parties alone unmixed with any fraud or knowledge on the part of the other equivalent to mutual mistake. For a mistake to be relievable in equity by reformation, it must be mutual, or else mistake on the part of one to the contract and fraud on the part of the other.

(Citation and punctuation omitted.) *Prince v. Friedman*, 202 Ga. 136, 138-139 (1) (42 SE2d 434) (1947). Here, there was no evidence of a mutual mistake or fraud.

Contrary to the majority opinion, the evidence did not establish that the contract set an unattainable deadline at its inception. The contracts provided that the rezoning applications were required to be filed *"within* [s]ixty (60) days" of the contracts' formation. (Emphasis supplied.) Significantly, the agent for Southern Trust and Martin Brothers conceded in his deposition testimony that if the rezoning applications had been filed earlier in January 2007, rather than near the end of the deadline period in February 2007, the April 1 deadline could have been met.[3] There was no evidence that the parties were laboring under the same misconception or that the sellers acted inconsistently with the specified deadline. Rather, when the deadline was not met, the sellers rescinded the contract in accordance with its terms. While the majority questions whether there was a benefit flowing to the sellers under the rezoning contingency, there is no need for this Court to second guess or question the parties' reasoning in fixing the clear, unambiguous terms. Simply, Southern Tradition and Martin Brothers were not allowed to re-write the contract to avoid operation of the terms when they were no longer deemed to be favorable. As such, the trial court was authorized to find that the claims seeking reformation and reinstatement of the contract were without merit. See *Prince*, supra, 202 Ga. at 138-139 (1); *Toy Wright Ventures*, supra, 281 Ga. App. at 280-281.

Likewise, the trial court was authorized to find that there was no merit to Martin Brothers's fraud claim, alleging that Fritts misrep-

---

[3] The majority opinion also reflects misplaced reliance upon the agent's testimony that he miscalculated the deadline by failing to correctly analyze the consequences of a rescheduled county commission meeting. The rescheduled meeting referenced in the agent's testimony had initially been scheduled for May 10, 2007, which fell after the April 1 rezoning deadline. The agent testified that when the May meeting was canceled, it was rescheduled for an earlier date of April 26, 2007. Nevertheless, since the rescheduled May meeting and the April 26 meeting both were after the April 1 rezoning deadline, they could not be relied upon as impacting or excusing the buyers' failure to properly calculate or meet the April 1 rezoning deadline.

resented his authority to execute the contract for the four-acre tract on behalf of Sterling Trust. To present a valid fraud claim, Martin Brothers was required to show that it justifiably relied upon Fritts's alleged misrepresentation. See *Lester v. Bird*, 200 Ga. App. 335, 338 (1) (408 SE2d 147) (1991).[4] "A plaintiff may not recover on the basis of warranty of authority or fraud when he could have protected himself by the exercise of ordinary care." (Citation and punctuation omitted.) *Walker v. Williams*, 177 Ga. App. 830, 833 (341 SE2d 487) (1986). The evidence established that Martin Brothers's agent was fully aware that the property was held under a trust by Sterling Trust, and in fact, he designated Sterling Trust as the seller and listed the address for Sterling Trust in the contract that he prepared. Yet, there was no evidence that Martin Brothers's agent contacted Sterling Trust or took any action in the exercise of ordinary care to ascertain Fritts's authority to execute the contract. Martin Brothers's lack of diligence bars its recovery for fraud. See id.

Because the record supports the trial court's finding that the claims of the complaint lacked substantial justification and failed to present a justiciable issue, I believe that the decision to award attorney fees was authorized. See OCGA § 9-15-14 (a), (b); *Robinson v. Glass*, 302 Ga. App. 742, 743-746 (691 SE2d 620) (2010).

I am authorized to state that Presiding Judge Phipps joins in this opinion.

DECIDED MARCH 30, 2011 —
RECONSIDERATION DENIED APRIL 14, 2011 — 

*Berman, Fink & Van Horn, Charles H. Van Horn, Anne E. Andrews, Matthew J. Simmons*, for appellants.

*Stewart, Melvin & Frost, Frank Armstrong III, Nancy L. Richardson*, for appellees.

---

[4] The elements of a fraud claim are: (1) false representations made by the defendant; (2) that the defendant knew the representations were false; (3) an intention by the defendant to induce the aggrieved party to act or refrain from acting in reliance on the representations; (4) *justifiable reliance by the aggrieved party on the representations*; and (5) damage to the aggrieved party. (Citation omitted; emphasis supplied.) *Lester*, supra, 200 Ga. App. at 338 (1).