A07A0161, A07A0162. VITO v. INMAN et al.; and vice versa.
(649 SE2d 753)

JOHNSON, Presiding Judge.

George R. Vito, a podiatrist, performed a surgical procedure known as "limb lengthening" on several patients. Mark Inman, an attorney, sued Vito on behalf of one such patient, Sabih Kalidy, who alleged Vito committed negligence per se and medical malpractice in connection with the procedure. That case was settled. Inman also filed a negligence and malpractice action against Vito's professional corporation, The Foot and Leg Centers of Georgia, P.C., on behalf of a patient named Watson.

Inman then began representing another client, Ghurjit Dhillon, on whom Vito had performed the same procedure.[1] In preparing to file Dhillon's suit, Inman made two telephone calls to Aldo Cecena, a patient of Vito's, hoping to get information relevant to the Dhillon case. When no one answered the phone, Inman left the following two messages on Cecena's answering machine.

*Message one*:

Yes, my name is Mark Inman. I'm a lawyer in Atlanta, Georgia, and I represent several patients suing a doctor by the name of George Vito, who is a podiatrist in Macon, Georgia. It is my understanding that a Mr. [patient's name], ah, received treatment by Dr. Vito and I was calling to see if you would be willing to speak with me regarding the care that he received. I apologize if this is the wrong number, but I could not find a listing for [patient's name] and am merely calling a [patient's last name] listings [sic] in California. So, if this is the wrong number, again, I apologize. However, if this is Mr. [patient's name], if you wouldn't mind calling, and again, my name is Mark Inman, I'm a lawyer in Atlanta representing several patients suing Dr. Vito. My phone number is 404-524-9455. Thank you very much.

*Message two*:

Yes, my name is Mark Inman. I am a lawyer in Atlanta, Georgia. I am representing several patients of a gentleman by the name of George Vito and I was calling to see if this was [patient's name]'s phone number. I apologize for calling at random but I don't have a listing and just called an [patient's

---

[1] That case eventually resulted in the grant of summary judgment for the patient on the issue of Vito's liability on the negligence per se claim, which ruling we affirmed on appeal. See *Vito v. Dhillon*, 269 Ga. App. 899 (605 SE2d 602) (2004).

name] in California. Ah, Mr. [patient's last name] if you would like to talk to me, I would appreciate talking to you about the care you received by Dr. Vito. Again, I am representing a couple of his patients in lawsuits against him and was wondering if I could speak with you about how he handled your case. My number is 404-524-9455, it is Friday afternoon at about 3:15 and if you wouldn't mind giving me a call, I would appreciate it very much. Thank you.

When Vito learned of the messages, he sued Inman and Inman's law firm for slander, tortious interference with business relations, and misappropriation of trade secrets. Vito's claims were based solely on these two telephone messages. Inman moved for summary judgment. The trial court granted Inman's motion as to slander and tortious interference with business relations, but denied his motion as to misappropriation of trade secrets.

In Case No. A07A0161, Vito appeals from the grant of summary judgment to Inman on Vito's slander and tortious interference with business relations claims. In Case No. A07A0162, Inman appeals from the denial of his motion for summary judgment on Vito's misappropriation of trade secrets claim. Because Inman was entitled to summary judgment on all three claims, we affirm the grant of summary judgment in Case No. A07A0161, and reverse the denial of summary judgment in Case No. A07A0162.

## Case No. A07A0161

1. Vito contends the court erred in granting Inman's motion for summary judgment on the slander claim. He urges that, contrary to the trial court's remark at the hearing on the motion, Inman's messages were not privileged as statements made on behalf of a client in preparation for a lawsuit.[2] He argues that the calls were likely an attempt to solicit a client for a malpractice lawsuit. Vito adds that the statements were false in that Inman was not representing "several" patients and had no lawsuits pending against him individually at the time he made the phone calls. This enumeration is without merit.

First, an attorney may claim a privilege to make statements which are necessary to fulfill his professional obligation to his client

---

[2] See *Sherwood v. Boshears,* 157 Ga. App. 542, 543 (278 SE2d 124) (1981) (a charge made against a person regarding his trade, calculated to injure him, is actionable per se unless made under circumstances which constitute a privileged communication; privilege requires good faith, an interest to be upheld, a statement properly limited in scope, a proper occasion, and publication to proper persons).

and protect his client's interest.[3] Comments of counsel, fairly made, on the circumstances of a case in which he is involved and on the conduct of the parties connected therewith are privileged communications.[4]

Inman testified that he left the messages on Cecena's answering machine in preparation for filing a lawsuit against Vito on behalf of Dhillon. According to Inman, Cecena was a potential fact witness in Dhillon's case since he also received the limb lengthening treatment from Vito. Inman made the statements in his role as counsel for Dhillon in a lawsuit he intended to file against Vito, and it is privileged.[5] We note that the State Bar of Georgia found that the messages did not violate any ethics rules for attorneys and dismissed the grievance Vito filed with the State Bar against Inman concerning the phone calls.

Second, the slander claim fails because Vito has not shown the statements were false. Defamation law overlooks minor inaccuracies and concentrates upon substantial truth.[6] A statement is not considered false unless it would have a different effect on the mind of the listener from that which the pleaded truth would have produced.[7] Minor factual errors which do not go to the substance of the statement do not render a communication false for defamation purposes.[8]

Inman stated that he represented "several" patients suing Vito. At the time he made the statements, Inman had filed and settled a case against Vito on behalf of one client, and was preparing to file an action against him on behalf of another client. At the same time, Inman was representing another patient in a lawsuit pending against Vito's professional corporation. At best, Vito points only to inaccuracies in minor details in the statements. More precise statements would not have produced a different effect on the listener.[9] Vito failed to produce evidence creating a jury issue as to whether the statements were false, so the trial court did not err in granting summary judgment to Inman on this claim.[10]

2. Vito contends the trial court erred in granting summary judgment to Inman on the tortious interference with business relations claim. He argues that Inman's actions caused patients Dhillon and Jay Otero (on whose behalf Inman filed a negligence action

---

[3] Id. at 543-544.

[4] OCGA § 51-5-7 (7).

[5] See generally *Sherwood*, supra.

[6] *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 888 (520 SE2d 721) (1999).

[7] Id.

[8] Id.

[9] See generally id.

[10] See id. at 891.

against Vito after Vito filed the underlying action against Inman) to discontinue their relationships with him. Vito adds that he suffered financially as a result of Inman's actions in that he paid his own employee wages for time spent providing Inman with a patient list, and that he paid higher malpractice insurance premiums.

A claim for tortious interference with business relations requires a showing that the defendant: (1) acted improperly and without privilege; (2) acted purposely and with malice and the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury.[11]

As noted above, Vito has not shown that Inman acted improperly and without privilege. Nor has he produced evidence that Inman acted with malice and the intent to injure. Vito has pointed to no evidence that the two patients discontinued their relationships with him because of Inman's statements to Cecena. And, assuming arguendo that an increase in Vito's insurance rate and his payment of unearned wages to his employee are relevant to an interference with business relations claim, Vito has not pointed to any evidence that these alleged costs resulted from Inman's phone messages to Cecena. Therefore, Vito has failed to produce evidence establishing the elements of tortious interference with business relations, and the trial court properly granted summary judgment to Inman as to that claim.[12]

### Case No. A07A0162

Inman contends the trial court erred in denying his motion for summary judgment on Vito's misappropriation of trade secrets claim. Inman urges that the purported trade secret — a list of Vito's patients' names (which Inman denies having received) — is not a trade secret within the meaning of the Georgia Trade Secrets Act.[13] We agree and reverse.

OCGA § 10-1-760 et seq. provides a private right of action for damages arising out of the misappropriation of a trade secret. Under the Georgia Trade Secrets Act, a customer list may constitute a trade secret under some circumstances.[14] In this case, however, it does not.

To be protected as a trade secret, a customer list must (1) derive economic value from being a secret not readily ascertainable by

---

[11] *Willis v. United Family Life Ins.*, 226 Ga. App. 661, 665 (2) (487 SE2d 376) (1997).

[12] See id.

[13] OCGA § 10-1-761 (4) (A).

[14] OCGA § 10-1-761 (4); see *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 536 (3) (b) (484 SE2d 259) (1997).

proper means, and (2) be the subject of reasonable efforts to maintain its secrecy.[15] A plaintiff must prove both prongs to be entitled to protection under the Act.[16] Vito has produced no evidence that he derives some economic value from keeping a list of his patients a secret not readily ascertainable, or that he has made reasonable efforts to maintain the list's secrecy. In fact, Vito admitted in his deposition that other podiatrists would not seek to use the list to take his patients from him. His concern was that lawyers would use such a list to find clients for malpractice cases.

Moreover, we point out that a trade secret is protected from misappropriation because the secret gives the trade secret owner a competitive advantage in the industry.[17] Inman, an attorney, is not in the same industry as Vito and is not one of his competitors. Thus, if Inman has a list of Vito's podiatry patients, that does not reduce Vito's competitive edge in his field. The trial court erred in denying summary judgment to Inman on the trade secrets claim.

*Judgment affirmed in Case No. A07A0161. Judgment reversed in Case No. A07A0162. Phipps and Mikell, JJ., concur.*

DECIDED JULY 2, 2007 —
RECONSIDERATION DENIED JULY 18, 2007 — 

*Richard A. Hull,* for appellant.
*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., J. Christopher Fox II, Weinberg, Wheeler, Hudgins, Gunn & Dial, Terrance C. Sullivan,* for appellees.

---

[15] *Avnet, Inc. v. Wyle Laboratories,* 263 Ga. 615, 616 (1) (437 SE2d 302) (1993).

[16] *Bacon v. Volvo Svc. Center,* 266 Ga. App. 543, 544 (1) (597 SE2d 440) (2004).

[17] See generally *Essex Group, Inc. v. Southwire Co.,* 269 Ga. 553, 554-555 (1) (501 SE2d 501) (1998).