A11A0649. SUTTER CAPITAL MANAGEMENT, LLC et al.
v. WELLS CAPITAL, INC. et al.

(714 SE2d 393)

DOYLE, Judge.

Wells Capital, Inc., and Wells Partners, L.P. (collectively, "Wells"), filed suit against Sutter Capital Management, LLC, and Sutter Opportunity Fund 3, LLC (collectively, "Sutter"), alleging that Sutter misappropriated a confidential list of Wells's investors in violation of Georgia's Trade Secrets Act.[1] The trial court granted summary judgment to Wells, entering final judgment in the amount of $667,304.51, and Sutter appeals. We reverse, for the reasons that follow.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the material portions of the record show that Wells Real Estate Funds I through XII were Georgia public limited partnerships.[3] Wells Capital, Inc., is a general partner of Wells Real Estate Funds I, II, and III, and Wells Partners, L.P., is a general

---

[1] See OCGA § 10-1-760 et seq.

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] Wells is described as "a real estate venture whose business is the collection of rent from leased properties."

partner of Wells Real Estate Funds IV through XII. Investors in the partnerships were limited partners. Wells maintains a list of relevant data for each of the investors in the partnerships, including their addresses.

Sutter Capital Management's business "[i]s to manage private investment funds that are invested mostly in real estate limited partnerships purchased in the secondary market." Sutter Opportunity Fund 3 "is one of the funds managed by Sutter Capital Management whose purpose is to invest mostly in real estate limited partnerships in the secondary market." Sutter's goal is to acquire real estate limited partnership units at discounts and then resell them for a profit.

Ira J. Gaines, a self-described "limited partnership buyer,"[4] was an investor/limited partner in the Wells partnerships at issue in this case. The Wells partnership agreements required that the general partners maintain a list of the limited partners, "which shall be available for inspection by any limited partner or its designated representative." As a condition to becoming a Wells partner, however, Gaines executed an addendum to his transfer and assignment agreement in which he agreed to "only request a copy of the list of names and addresses of the Limited Partners for purposes reasonably related to [his] Interest as a partner in the Partnership" and "not [to] request the names and addresses of the Limited Partners for the making of a tender offer to the Limited Partners in the Partnership, the selling of such list, or any other commercial purposes."

Gaines was also a creditor of Sutter Capital Management and an investor/owner in Sutter Opportunity Fund 3, LLC. In 2004, the president of Sutter Capital Management, LLC, advised Gaines that Sutter wanted to obtain Wells's investor lists so that it could mail mini-tender offers to the limited partners for the purchase of Wells's partnership units.[5] Gaines then made a request to the Internal Revenue Service ("IRS") for copies of Wells's tax returns, including attachments, which contained a list of all of the partners, along with additional information regarding each partner, including his/her address. At the time, the IRS would provide such information regarding other limited partners to an existing limited partner in a partnership.[6] The IRS granted the request and shipped the docu-

---

[4] Gaines deposed that he was a limited partner in approximately 800 limited partnerships.

[5] Sutter's president testified that Gaines approached him and offered to obtain the information regarding Wells investors from the IRS. Gaines deposed that Sutter's president approached Gaines's secretary.

[6] See 26 USC § 6103 (e) (1) (c).

ments to Sutter's office.

Upon receipt, Sutter provided the list of investors and their addresses to Business Services Network, Inc. ("BSN"), an entity Sutter hired to create mailing lists from the information. BSN then mailed mini-tender offers on Sutter's behalf to Wells's limited partners, seeking to purchase units in the partnerships. Multiple Wells investors then sold their units to Sutter.[7] As a condition to becoming a partner, Sutter also executed the same addendum that Gaines executed, agreeing to only request a list of investors "for purposes reasonably related" to the partnership interest and not to request the information for the purpose of making tender offers.

Wells filed suit against Sutter, alleging Sutter misappropriated confidential lists of Wells investors, which constituted trade secrets. The parties then filed cross-motions for summary judgment. Following oral argument, the trial court denied Sutter's motion for summary judgment and granted summary judgment to Wells, awarding damages in the amount of $667,304.51.[8]

Sutter appeals the trial court's order in several enumerations, arguing, inter alia, that the Wells investor lists did not constitute trade secrets. We agree.

"To obtain relief under the Georgia Trade Secrets Act, OCGA § 10-1-760 et seq., [Wells] must demonstrate both that the information in question constitutes a 'trade secret' as defined by OCGA § 10-1-761 (4) and that [Sutter] misappropriated that trade secret."[9] The Act defines "trade secret" as

> information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information: (A) *Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use*; and (B) Is the subject of efforts that are

---

[7] As of July 17, 2008, Sutter Opportunity Fund 3 had accumulated 228,798 units in the Wells funds.

[8] In its order, the trial court found that Wells had been required under the Securities and Exchange Act of 1934 to provide each of the approximately 30,000 limited partners with a statement disclosing the partnership's position or recommendation regarding any tender offer. The court concluded that Wells incurred $667,304.51 in costs and expenses, including attorney fees and printing and shipping costs, in providing its written statement to the partners.

[9] *Wachovia Ins. Svcs. v. Fallon*, 299 Ga. App. 440, 445 (3) (682 SE2d 657) (2009).

reasonable under the circumstances to maintain its secrecy.[10]

Pretermitting whether Wells made reasonable efforts to maintain the secrecy of the lists, Wells has failed to demonstrate that the lists "[d]erive[ ] economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."[11]

The position statement that Wells mailed to its limited partners — which recommended that the partners reject Sutter's tender offer — specifically states: "Whether or not you transfer your units will have no direct financial impact on the general partners or their affiliates." Wells's 30 (b) (6) corporate representative, vice president, and chief of staff admitted at deposition that none of the partnership transfers to Sutter had any direct financial impact on the general partners or their affiliates related to the partnership. It follows, therefore, that there is no economic value to Wells in *maintaining the secrecy*, if any, of the lists as it relates to the mini-tender offers. And Wells has failed to provide any other possible basis to conclude that the secrecy of the lists has economic value, confusing the *damages* it allegedly sustained in drafting and mailing its position statement to the limited partners in response to Sutter's mini-tender offers with the requisite economic value of the secrecy of the investor lists.[12]

Thus, because Wells has failed to demonstrate that the investor lists and addresses constituted a trade secret, Wells's claim fails as a matter of law.[13] The trial court erred by granting summary judgment to Wells and denying Sutter's motion for summary judgment.

*Judgment reversed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 13, 2011 — 

*Womble, Carlyle, Sandridge & Rice, James Connelly, Mark A. Rogers*, for appellants.

---

[10] (Emphasis supplied.) OCGA § 10-1-761 (4).

[11] OCGA § 10-1-761 (4) (A).

[12] There is no allegation that Sutter used the list to compete in some way with Wells's business.

[13] See *Vito v. Inman*, 286 Ga. App. 646, 649-650 (2) (649 SE2d 753) (2007) (defendant was entitled to summary judgment as to claim for misappropriation of trade secrets because podiatrist plaintiff failed to produce evidence that he derived some economic value in the secrecy of his patient list); OCGA § 10-1-761 (4) (A).

*Anderson, Tate & Carr, Thomas T. Tate, Elizabeth Clack-Freeman, Troutman Sanders, William M. Droze*, for appellees.