**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2020**

# In the Court of Appeals of Georgia

A20A0087. DELLINGER-ALLEN et al. v. O'BRIEN.

HODGES, Judge.

E. Amanda Dellinger-Allen ("Dellinger-Allen") and E. Amanda Dellinger-Allen, LLC d/b/a Thrive Counseling ("Thrive") sued Allison O'Brien for defamation, breach of contract, violation of the Georgia Computer Systems Protections Act, and attorney fees. O'Brien answered and moved to strike the defamation and breach of contract counts of the complaint pursuant to the Georgia anti-SLAPP statute.[1] See OCGA § 9-11-11.1. Following a hearing, the Superior Court of Cobb County granted

---

[1] "'Strategic lawsuits against public participation,' or 'SLAPPs,' are meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation." (Footnote omitted.) *Wilkes & McHugh, P.A. v. LTC Consulting*, 306 Ga. 252, 257 (2) (830 SE2d 119) (2019)

O'Brien's motion, and Dellinger-Allen and Thrive appeal. For the following reasons, we affirm that portion of the trial court's order striking Dellinger-Allen's defamation claim, but reverse as to Thrive's claim for breach of contract.

Accepting Dellinger-Allen's allegations as true,[2] the record demonstrates that O'Brien contracted with Thrive on March 1, 2016 to provide counseling services to Thrive's clients.[3] To become a licensed counselor, O'Brien worked under Dellinger-Allen's direction and supervision until December 15, 2016. The relationship soured in December 2016, culminating in a dispute between Dellinger-Allen and O'Brien concerning the amount O'Brien owed to buy out the remainder of her contract with Thrive.[4]

O'Brien asked Dellinger-Allen to provide her with a document demonstrating the number of direct experience hours she worked under Dellinger-Allen in order to

---

[2] *Wilkes*, 306 Ga. at 262 (2) (b) ("The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law.") (citation and punctuation omitted).

[3] O'Brien's March 1, 2016, contract with Thrive replaced an earlier March 2, 2015, contract. To the extent the two contracts contain different provisions, the parties have not raised any arguments based upon any alleged differences.

[4] The dispute was based upon a disagreement as to the length and timing of O'Brien's maternity leave.

obtain her professional counseling license. Dellinger-Allen refused because she did not feel O'Brien was fulfilling the terms of her contract with Thrive, and thus offered to provide proof of O'Brien's hours "if [O'Brien] signed a promissory note for the amount [Dellinger-Allen] felt [O'Brien] owed." O'Brien declined. "After further consideration and discussion," Dellinger-Allen, through counsel, finally provided O'Brien with proof of the direct clinical experience hours O'Brien earned on December 23, 2016.

To recover the amount O'Brien allegedly owed, Thrive filed an action against O'Brien in the Magistrate Court of Cobb County on February 17, 2017 to collect $4,778.33. Thereafter, O'Brien filed an ethical complaint with the Georgia Composite Board of Professional Counselors, Social Workers and Marriage and Family Therapists (the "Board") on or about March 30, 2017 (the "grievance"). In it, O'Brien claimed that when she asked for her

> signed and notarized licensure paperwork for hours of direct post graduate clinical experience . . ., Ms. Dellinger refused to release the form to [her] until [she] paid [Dellinger-Allen] or signed a form agreeing to make payments over 6 months. [O'Brien] asked several times for [her] licensure form, as [she] had completed the hours for licensure and needed the form to apply for full licensure as a marriage and family

3

therapist. [Dellinger-Allen] refused and sent a copy only after [O'Brien's] attorney contacted her.

Similarly, O'Brien wrote of her concern "that Ms. Dellinger's behavior is in violation of several codes of ethics and exploits the trust and dependency of associate licensed therapists."

O'Brien supplemented her grievance on April 11, 2017.[5] In response, the Board emailed Dellinger-Allen on June 13, 2017 and requested that she provide additional information, including:

> 1. Do you now, or have you ever, provided supervision of/and directed work experience for, [O'Brien] at your . . . business, Thrive Counseling Center?

> 2. Did you refuse[] to sign and submit forms required for the licensure application of Ms. O'Brien? If yes, why have you refused?

---

[5] Dellinger-Allen's complaint only cited O'Brien's March 30, 2017 grievance that she sent the Board. Although Dellinger-Allen later referred to O'Brien's statements in the April 11, 2017 supplemental grievance that Dellinger-Allen "fraudulently and deceitfully exploited her position as [O'Brien's] director by withholding signature on earned direct clinical experience hours until [O'Brien] signed a promissory note," this basis for relief was not included in an amended complaint.

4

3. What training have you had as it pertains to supervision?

On June 16, 2017, Dellinger-Allen replied to the Board's inquiry, noting that she had provided O'Brien with "her Supervision Verification Forms for licensure" and "her forms for Direct Work Experience," and detailing her training in supervision. O'Brien filed an update to her original grievance with the Board on June 29, 2017.

Dellinger-Allen and Thrive filed the present action in the Superior Court of Cobb County on September 5, 2017, alleging causes of action for defamation, breach of contract, violation of the Georgia Computer Systems Protection Act, and attorney fees.[6] O'Brien answered and moved to strike and to dismiss Dellinger-Allen's complaint.[7] Concerned that O'Brien's motion "might be valid," the trial court ordered limited discovery to obtain O'Brien's communications with the Board. After additional briefing and a hearing, the trial court granted O'Brien's motion and struck

---

[6] Dellinger-Allen alleged that, at some point, the magistrate court action was resolved at mediation. O'Brien does not contest Dellinger-Allen's statement.

[7] Although O'Brien did not specify the counts of Dellinger-Allen's complaint which should be struck or dismissed, Dellinger-Allen's response addressed only the defamation and breach of contract counts.

Dellinger-Allen's defamation count and Thrive's breach of contract count from their complaint.[8] This appeal followed.

1. First, Dellinger-Allen contends that the trial court erred in granting O'Brien's motion to strike Dellinger-Allen's claim for defamation. We find no error.

(a) *Current Anti-SLAPP Statute.* OCGA § 9-11-11.1 (b) (1) provides that

[a] claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

Furthermore,

[a]s used in this Code section, the term "act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" shall include:

---

[8] We note that the trial court's order was prepared by O'Brien's counsel.

6

(1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

. . . [and]

(4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

OCGA § 9-11-11.1 (c).

In *Wilkes*,[9] our Supreme Court noted that, in view of "wholesale revision[s]" in 2016, "[t]he text of OCGA § 9-11-11.1 (b) (1) makes clear that the analysis of an

_____

[9] Of course, "we apply the law as it exists at the time of appeal rather than the law prevailing at the rendition of the judgment under review[.]" (Citation and punctuation omitted.) *Bradford v. Gen. Elec. Credit Corp. of Ga.*, 183 Ga. App. 782, 783 (359 SE2d 757) (1987); accord *Hammond v. State*, 334 Ga. App. 781, 783, n. 12 (780 SE2d 440) (2015) (same). The trial court filed its order granting O'Brien's motion to strike on June 7, 2019, while the Supreme Court decided *Wilkes* on June 24, 2019. 306 Ga. at 265. Accordingly, we are bound to apply *Wilkes* in evaluating the trial court's order. See *Bradford*, 183 Ga. App. at 783.

anti-SLAPP motion involves two steps." (Footnote omitted.) 306 Ga. at 252, 261 (2)

(b).

> First, the court must decide whether the party filing the anti-SLAPP motion (usually, the defendant) has made a threshold showing that the challenged claim is one 'arising from' protected activity. If a court concludes that this threshold showing has been made, it must proceed to the second step of the analysis and decide whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(Citations and punctuation omitted.) *Joshua David Mellberg, LLC v. Impact Partnership, LLC*, No. A20A0004, 2020 Ga. App. LEXIS 303, at *4 (Ga. App., June 3, 2020); see also *Wilkes*, 306 Ga. at 261-262 (2) (b). "Only a claim that satisfies both prongs of the anti-SLAPP statute — i.e., that arises from protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken." (Citation, punctuation, and emphasis omitted.) *Wilkes*, 306 Ga. at 262-263 (2) (b). We review an order granting or denying an anti-SLAPP motion de novo. Id. at 263 (2) (b).

(b) *Step One — Whether O'Brien's Grievance was in Furtherance of a Covered Right*. First, the trial court was required to decide whether O'Brien "made a threshold showing that the challenged claim [was] one 'arising from' protected activity." *Wilkes*, 306 Ga. at 262 (2) (b); see also OCGA § 9-11-11.1 (b) (1). "A

8

defendant meets [her] burden by demonstrating that the act underlying the challenged claim 'could reasonably be construed as' fitting within one of the categories spelled out in [OCGA § 9-11-11.1 (c)]." *Wilkes*, 306 Ga. at 262 (2) (b). One such category includes "[a]ny written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law[.]" OCGA § 9-11-11.1 (c) (1).

In this case, the trial court summarily found that O'Brien's statements to the Board "were made in furtherance of [O'Brien's] right to petition to a legislative, executive, or judicial proceeding pursuant to OCGA § 9-11-11.1 (b) (1)." Dellinger-Allen does not contest the trial court's finding related to her cause of action for defamation,[10] and we conclude that the finding was not erroneous. See OCGA §§ 43-1-2 (creating professional licensing boards division in office of secretary of state), 43-10A-4 (creating the Board and providing that members are appointed by the governor), 43-10A-5 (c) (1) (defining duties of the Board); Ga. Comp. R. & Regs., r. 135-8-.01 (establishing the Board's complaint procedure); compare *RCO Legal, P.*

_____

[10] As a result, Dellinger-Allen has waived any argument related to the first step of the trial court's anti-SLAPP analysis related to defamation. See generally *Dagne v. Schroeder*, 336 Ga. App. 36, 41 (3) (783 SE2d 426) (2016) ("Matters not enumerated as error will not be considered on appeal and are therefore presumed to be binding and correct.") (citation and punctuation omitted).

*S., Inc. v. Johnson*, 347 Ga. App. 661, 668 (2) (b) (820 SE2d 491) (2018) (concluding that review of a State Bar grievance "could reasonably be construed as statements made in connection with official proceedings"); *Jefferson v. Stripling*, 316 Ga. App. 197, 199-200 (1) (728 SE2d 826) (2012) (finding that complaints to the Office of the General Counsel of the State Bar of Georgia were "official proceedings authorized by law" and, therefore, subject to anti-SLAPP statute) (punctuation omitted).

(c) *Step Two — Whether Dellinger-Allen Demonstrated a Probability of Prevailing on Her Claims*. Dellinger-Allen contends that the trial court erred in applying the second step of the anti-SLAPP analysis because she "presented a prima facie showing of facts to sustain a favorable judgment if her evidence is credited."[11] We disagree.

---

[11] Dellinger-Allen's argument that the trial court applied an incorrect burden of persuasion is misplaced. Although the trial court did refer to a "preponderance of the evidence" standard in an earlier hearing, the trial court's order correctly noted that Dellinger-Allen was required to a show a probability that she would prevail on her claim. See *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 772 (4) (b) (815 SE2d 70) (2018) ("any discrepancy between [an] oral pronouncement and the written ruling will be resolved in favor of the written judgment"). We need not decide here the practical difference between the terms "probability" and "preponderance of the evidence." But see, e.g., *Carbone v. CNN*, No. 1:16-CV-1720-ODE, 2017 U. S. Dist. LEXIS 21628, at *7-*8 (N.D. Ga. Feb. 14, 2017) (noting that Georgia's anti-SLAPP statute "essentially creates a Rule 12 (b) (6) 'plus' standard for cases with a First Amendment nexus"); *Rosser v. Clyatt*, 348 Ga. App. 40, 43 (2) (a) (821 SE2d 140) (2018).

The first step of the anti-SLAPP analysis having been established, the burden shifted to Dellinger-Allen to establish "that there is a probability that [she] will prevail on [her] claim." *Mellberg*, No. A20A0004, 2020 Ga. App. LEXIS 303, at *4.

> To meet this burden, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie[12] showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. [To that end,] [t]he plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law.

(Citations and punctuation omitted.) *Wilkes*, 306 Ga. at 262 (2) (b); see also *RCO*, 347 Ga. App. at 667, n.10 (holding that "[t]o satisfy the second prong, a plaintiff responding to an anti-SLAPP motion must state and substantiate a legally sufficient claim") (citation and punctuation omitted).

Here, the trial court found, without any analysis, that Dellinger-Allen failed to demonstrate "that there is a probability that [she] will prevail on the claim. The Court

---

[12] See generally *Spivey v. Spivey*, 202 Ga. 644, 649 (1) (44 SE2d 224) (1947) ("Literally, the words, 'prima facie ' mean 'at first view.' A 'prima facie case' may be defined as one in which the evidence in favor of a proposition is sufficient to support a finding in its favor, if the opponent produced no evidence, or if all the evidence to the contrary be disregarded."), superseded by statute on other grounds as recognized by *Reeves v. Webb*, 297 Ga. 405, 407-408 (1) (774 SE2d 641) (2015).

finds that the Complaint and supplements to the Complaint to the Composite Board are true." Nevertheless, in accepting Dellinger-Allen's evidence as true and applying our de novo review, we conclude that the trial court did not err.

"To establish a cause of action for defamation, a plaintiff must submit evidence of (1) a false and defamatory statement about [her]self; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words "injurious on their face."" (Citation omitted.) *RCO*, 347 Ga. App. at 668 (2) (c). Importantly, "[b]ecause falsity is an essential element of both libel and slander, truth is a perfect defense to a defamation action." (Citation omitted.) *Lucas v. Cranshaw*, 289 Ga. App. 510, 512 (1) (659 SE2d 612) (2008).

Here, we need only look to the first element of Dellinger-Allen's defamation claim to conclude that she failed to demonstrate a probability that she will prevail on her claim.[13] In her original grievance to the Board, O'Brien stated that Dellinger-Allen refused to release the licensing forms to her until she either paid Dellinger-

---

[13] Dellinger-Allen's recurring argument that O'Brien knew her statements to the Board were false because Dellinger-Allen had already given O'Brien her licensing forms overlooks the fact that, regardless of their timing, O'Brien's statements provided a truthful account of the parties' initial interactions.

Allen or signed a promissory note. For her part, Dellinger-Allen acknowledged that she initially refused to provide O'Brien with the licensing documents because she did not feel O'Brien was fulfilling the terms of her contract with Thrive. As a result, Dellinger-Allen offered to supply the documents "if [O'Brien] signed a promissiory note for the amount [Dellinger-Allen] felt [O'Brien] owed." Indeed, it was only "[a]fter further consideration and discussion" that Dellinger-Allen, through counsel, finally provided O'Brien with the documents. That Dellinger-Allen *ultimately* provided O'Brien with the licensing documents is irrelevant — the substance of O'Brien's grievance was Dellinger-Allen's initial ultimatum and its possible relevance to the Board's rules and standards. Accordingly, even accepting Dellinger-Allen's evidence as true, Dellinger-Allen cannot show that O'Brien's grievance was false. Therefore, Dellinger-Allen cannot demonstrate a probability that she would prevail in her defamation action against O'Brien. See generally *Vito v. Inman*, 286 Ga. App. 646, 648 (1) (649 SE2d 753) (2007) (finding that plaintiff could not recover for slander because of inability to prove falsity and recognizing that "[d]efamation law overlooks minor inaccuracies and concentrates upon substantial truth") (citation omitted).

In short, Dellinger-Allen seeks to recover for defamation because she ultimately provided the licensing documents to O'Brien, ostensibly rendering O'Brien's complaint false, while acknowledging that O'Brien's grievance accurately stated the parties' interactions. This, the law does not allow. Accordingly, we conclude that the trial court did not err in granting O'Brien's motion to strike Dellinger-Allen's cause of action for defamation.

2. Second, Thrive contends the trial court erred in granting O'Brien's motion to strike its cause of action for breach of contract. Specifically, Thrive argues that O'Brien breached two provisions of her independent contractor agreement with Thrive: (1) Paragraph 7 (c),[14] concerning the return of confidential information in O'Brien's possession upon termination of the agreement; and (2) Paragraph 9,[15]

[14] "Contractor agrees that he or she will treat as confidential and not use, other than in the course of performing Services pursuant to this Agreement, or disclose in any manner during the Term of this Agreement or at any time following the termination of this Agreement any confidential or proprietary data or information relating to Thrive Counseling. . . . Upon termination of this Agreement, Contractor shall promptly deliver to Thrive Counseling all originals and copies of all Confidential Information in Contractor's actual or constructive possession."

[15] "Contractor agrees not to take any action or make any statement (verbally or in writing) which is intended, or would reasonably be expected, to harm Thrive Counseling, its representatives, employees, independent contractors, other Associates, or their reputation or which would reasonably be expected to lead to unwanted or unfavorable publicity to Thrive Counseling. . . . This agreement is in effect during

14

prohibiting statements which would harm Thrive or which would "lead to unwanted or unfavorable publicity to Thrive. . . ." For the following reasons, we reverse.

(a) *Paragraph 7 (c)*. Thrive first argues that O'Brien failed to return certain confidential information to it, in violation of Paragraph 7 (c) of the parties' agreement.[16] Despite the absence of any showing of a breach of Paragraph 7 (c), Thrive correctly notes that O'Brien failed to make "a threshold showing that the challenged claim [was] one 'arising from' protected activity." *Wilkes*, 306 Ga. at 262 (2) (b); see also OCGA § 9-11-11.1 (b) (1). In fact, the *only* argument Thrive presented in the trial court, either orally or in writing, concerning its breach of contract claim consisted of the following statement by Thrive's counsel during an initial hearing on its motion to strike:

> The contract claim is basically the same [as the defamation claim]. The
> contract claim says [O'Brien] made these statements and that was a

the term of this Agreement and for two years following its Termination."

[16] We note that the trial court made no findings of fact or conclusions of law related to Thrive's cause of action for breach of contract, although the absence of such findings and conclusions is not necessarily fatal to Thrive's argument. See generally OCGA § 9-11-52 (b); *McLeod v. Clements*, 326 Ga. App. 840, 842 (1) (755 SE2d 346) (2014) (finding that OCGA § 9-11-52 (b) "does not apply to motions except as provided in OCGA § 9-11-41 (b), which relates to involuntary dismissals and is not applicable here").

15

breach of the contract. So I ask the Court to strike that claim, too, because it's basically the same thing.

A defendant satisfies her burden under the first step of the anti-SLAPP analysis "by demonstrating that the act underlying the challenged claim 'could reasonably be construed as' fitting within one of the categories spelled out in [OCGA § 9-11-11.1 (c)]." *Wilkes*, 306 Ga. at 262 (2) (b). O'Brien has not shown any connection between her grievance to the Board and Paragraph 7 (c) of the agreement. See generally OCGA § 9-11-11.1 (b) (1); *Wilkes*, 306 Ga. at 262 (2) (b) ("challenged claim [was] one 'arising from' protected activity"). Due to O'Brien's failure to meet her threshold burden to satisfy the first step of the anti-SLAPP analysis, we conclude that the trial court erred in granting O'Brien's motion to strike Thrive's breach of contract claim based upon an alleged breach of Paragraph 7 (c) of the parties' agreement. Therefore, we reverse that portion of the trial court's order.

(b) *Paragraph 9*. At first glance, O'Brien's grievance to the Board seems more closely related to the alleged breach of the anti-disparagement clause of her agreement with Thrive. However, O'Brien failed to articulate that her act of filing a grievance with the Board was permissible despite the existence of Paragraph 9, such that Thrive's complaint sought to stifle protected conduct. Furthermore, left un-

16

answered is the question of whether Thrive, as a business regulated by the secretary of state, could pursue an action against O'Brien based upon a *confidential* complaint to Thrive's governing body about Dellinger-Allen. See OCGA §§ 43-1-19 (h) (defining confidential nature of a licensing board's hearing procedures generally), 43-10A-17 (h) (defining confidential nature of Board's hearing procedures); Ga. Comp. R. & Regs., r. 135-8-.01 (4) (providing that "the name of the person or business entity against whom [a] complaint is being filed shall be treated as confidential" during the Board's investigation of a complaint). Stated differently, O'Brien failed to make a threshold showing that Thrive's breach of contract claim as to Paragraph 9 arose from O'Brien's confidential grievance about Dellinger-Allen. See *Wilkes*, 306 Ga. at 262 (2) (b); see also OCGA § 9-11-11.1 (b) (1). As a result, we reverse the trial court's order striking Thrive's complaint based upon an alleged breach of Paragraph 9 of the agreement.

In sum, we conclude that the trial court correctly granted O'Brien's motion to strike Dellinger-Allen's claim for defamation. However, we further conclude that the trial court erred in striking Thrive's breach of contract claim. Therefore, we affirm in part and reverse in part the trial court's order granting O'Brien's motion to strike Dellinger-Allen and Thrive's complaint.

17

*Judgment affirmed in part and reversed in part. McFadden, C. J., and Doyle, P. J., concur.*